JOHN H. GOSSLER *et al. against* JOHN D. SCHEPELER *et al.*

The right of stoppage *in transitu* may be exercised not only by the vendor of the goods, but also by a person who pays the price of the goods for the vendee and takes from the vendee an assignment of the bill of lading as security for his advances.

Defendants obtained credit with plaintiffs "for" or "against" a cargo of iron purchased from a third party. Plaintiffs paid the price of the iron, and received the bill of lading therefor to the order of the shippers, and by them indorsed in blank, as security for the payment of their advances. Plaintiffs sent the bill of lading to defendants, who received it, but who became insolvent before they received the goods or had negotiated the bill of lading. *Held,* that plaintiffs could retake the goods and compel the defendants to deliver up to them the bill of lading.

APPEAL by plaintiffs from a judgment of this court dismissing the complaint entered on the report of a referee to hear and determine.

The facts are fully stated in the opinion.

*Augustus F. Smith*, for appellants.

*T. C. T. Buckly* (*S. P. Nash* with him), for respondents.

ROBINSON, J.—From some time in the year 1862 until in April, 1869, the plaintiffs were bankers in Hamburg, and the several defendants, composing the firm of Schepeler & Co., were engaged in the mercantile business in New York. During that period these firms had business transactions together, involving large amounts and of a varied character. On the 25th of February, 1869, Schepeler & Co., at New York, wrote plaintiffs, at Hamburg, that their firm, through John D. Schepeler, one of their members, then in Antwerp, might have occasion to open a credit with plaintiffs, for their account, for a shipment of iron to New York, and added, " the bills of lading for same, we expect, will be handed to us by you."

The receipt of this letter was acknowledged by plaintiffs'

reply of March 12th, 1869, in which they state: "We have to acknowledge receipt of your favor of the 25th February, from which we observe that your Mr. J. D. Schepeler, now in Antwerp, may have occasion to open with us, for your account, a credit for shipment of iron to your place, forwarding bill of lading to us; so far he has not applied for it."

Before Schepeler & Co. could have received this answer, they, under date of March 17th, 1869, telegraphed plaintiffs: "If agreeable grant J. D. Schepeler credit hundred thousand marcs, three months, against iron shipment, wire." On the same day they wrote the plaintiffs, in the German language, referring to their first letter of credit, and stating: "We request you, if convenient, to give Mr. J. D. Schepeler, of Antwerp, a three months' credit for our account, of marcs banco 100,000, for (or, as otherwise translated, 'against') iron shipment from Wales therefor (or, as otherwise translated, 'thereagainst'); Mr. J. D. Schepeler will hand you bills of lading." On receipt of the telegram, on the 18th of March, plaintiffs informed Schepeler & Co. they would grant such credit, and on the same day wrote to J. D. Schepeler, at Antwerp, advising him of the receipt of this telegram and their reply to it, and stated that they had placed at his disposal 100,000 marcs banco, to be used in three months' drafts by remittance of bill of lading of a shipment of iron to New York. This credit was used in the payment of a shipment of railroad iron purchased by Schepeler & Co., of the Ebbervale Steel, Iron and Coal Company, in Wales, which that company, on the 29th of March, shipped on board the ship J. S. De Wolf, at Newport, Wales, on bills of lading to their own order, by which it was agreed the vessel was to proceed to Hampton Roads, Va., for orders to proceed to Norfolk or New York, as Schepeler & Co. might direct. The vessel had been chartered by Schepeler & Co. for that voyage, but this fact does not appear to have been communicated to plaintiffs. The shipment so made was paid for by plaintiffs, not immediately to the vendors, but indirectly, on being furnished with the bill of lading indorsed in blank by the shippers. They immediately thereafter, by letter of April 13th, 1869, advised Schepeler & Co. as follows: "Mr. C. H.

Schepeler handed us the inclosed bill of lading, indorsed in blank, for 7,940 rails, equal to 1,404 tons 1 hundred weight 3 quarters and 23 pounds, shipped per the J. S. De Wolf, Captain Davenham, from Newport to Hampton Roads for orders, which is at your service and in conformity with the credit opened in favor of Mr. J. D. Schepeler, and by him transmitted to Mr. C. H. Schepeler; we have accepted the drafts of the latter. Marco banco 113.450,8 due 9th July to the debit of your account." This letter and the inclosed bill of lading were received by Schepeler & Co., on or prior to April 30th, 1869, when they acknowledged the credit, and stated they would use the bill of lading. They never did make any use of it, but on the 17th of May following they suspended payment, and having become bankrupts, the defendant Von Sachs, has been appointed their assignee in bankruptcy. Immediately on their failure, a demand was made on behalf of plaintiff, for a return of the bill of lading and cargo of iron, which being refused, proceedings were instituted by the plaintiffs by way of reclamation of the goods and their stoppage *in transitu*.

No other question than their right in this respect is presented. In the adverse judgment from which this appeal is taken, the referee who tried the cause found as matter of fact, that by the letters and telegrams through which the agreement between the parties arose and was consummated, "plaintiffs were to have a lien on said iron and on the bill of lading therefor, for any advance or advances made by them under and in pursuance of said credit," and this finding, on this appeal, is to be assumed to be correct.

Vested with such lien upon the bill of lading and the iron it represented, for the amount they had advanced in payment of the purchase money and towards perfecting the interest of Schepeler & Co. in the property, the question is presented whether upon the insolvency of that firm, the plaintiffs, through such right of lien, continued while such goods were in transit to their debtors, to possess the legal authority to resume the possession which they previously had, but had temporarily relinquished for the purpose of such transit.

The question is in no respect controlled or influenced by

the fact that Schepeler & Co. had chartered the De Wolf for that voyage. No absolute delivery of the iron had been made to them on board the vessel as its owners or charterers, but in all the dealings between the parties, the only dominion or control they had acquired over the iron was through the bill of lading in its agreed and representative character of an obligation on the part of the owner of the vessel as carrier, to convey and deliver the property according to its terms (*Turner* v. *Trustees Liverpool Docks*, 6 Exch. 543 ; *Scholman* v. *Lancaster & York R.*, L. R. 2 Ch. App. 332 ; Benj. on Sales [2d ed.] 699 to 702), and defendants were estopped from alleging that the shipment was made otherwise than as per the bill of lading, or to claim that the delivery had been made *absolutely* to them on board their own vessel, nothing to that effect having been suggested in the transaction with the plaintiffs.

The right of stoppage *in transitu* is one highly favored in the law, and has been extended to *quasi* vendors or persons standing in a similar position to vendors. It is founded upon the plain reason of justice and equity, that one man's property should not be applied to the payment of another man's debt (Benj. on Sales [2d ed.] 689 ; 2 Kent, 542). In *De Aquila* v. *Lambert* (Ambl. 399), the consignor, at the request of the consignee, bought and paid for the goods, and, on making the shipment, drew bills of exchange for the money paid. Upon the insolvency of the consignee while the goods were in transit, the right of stoppage *in transitu* by the consignor was maintained by Lord Nottingham, making reference to the cases of *Wiseman* v. *Vandepool* (2 Vern. 203), and *ex parte Wilkinson*, (in chancery, not reported), who held that in such case, the consignor was to be substantially considered as a merchant selling the goods to the consignee. So in *Feise* v. *Wray* (3 East, 93), the right was sustained in behalf of a mere factor or purchasing agent, not only as to his advances but also as to his commissions. To the same effect in *Snee* v. *Baxter* (1 Atk. 285), sustained and recognized by numerous other cases (see Benj. on Sales [2d ed.], 690, and cases cited in note 7); also, in this court in *Franchisin* v. *Henriques* (6 Abb. N. S. 251). The Court of Appeals, in *Muller* v. *Ponder* (MSS., decided during the last

year [1874]); also assert the principle that a party in any way interested by way of lien or special interest in personal property consigned to his debtor *on faith of his solvency*, has, upon his insolvency occurring while the goods are in transit, the right to their reclamation or stoppage *in transitu* for the protection of such lien or interest.   To that extent he is a *quasi* vendor entitled to use all lawful means in preventing his property or interests being sacrificed towards the payment of another person's debts, and especially so where the adverse claim is made not by a *bona fide* purchaser but by others assigned.

I am also unable to discover any lack of efficiency in any of the proceedings taken by or on behalf of the plaintiffs to assert and enforce such rights.   It does not lay with the defendants to impute to such agencies as the plaintiffs adopted, any want of authority from them when the proceedings taken on their behalf have been fully ratified.   The respective rights of the parties in the property have been duly presented and made the subject of adjudication upon the merits.   The whole has been sold and the proceeds brought into court for adjudication between them.   In my opinion the plaintiffs plainly presented a case as proven, established their lien or interest to the extent of their advances, and their right to reclaim the goods *in transitu*.   The decision of the referee to the contrary should be reversed, and a new trial ordered, with costs to abide the event.

VAN BRUNT and LARREMORE, JJ., concurred.

Ordered accordingly.